# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| Francis Doll III, Perry Piper, John Foster, Ben Hammer, Dale Bentley, Dan Gordon, Charles Gregory, Wesley Frame, Jason Matthys and Karen Gorton, individually and on behalf of a class of all those similarly situated, | Case No. _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| Champion Laboratories, Inc.; United Components, Inc.; Purolator Filters N.A. L.L.C.; Bosch U.S.A.; Mann+Hummell U.S.A.; Arvinmeritor Inc.; Honeywell International; Wix Filtration Corp. LLC; Cummins Filtration Inc.; The Donaldson Company; and Baldwin Filters, Inc., | |
| Defendants. | May 9, 2008 |

This action arises out of a conspiracy among the leading manufacturers of replacement oil, gas, transmission and air filters (as defined below) to fix, raise, maintain or stabilize prices, and allocate customers for those products, in California, Kansas, Minnesota, Nebraska, North Dakota, South Dakota and Wisconsin, as well as throughout the United States.

Plaintiffs Francis Doll III, Perry Piper, John Foster, Ben Hammer, Dale Bentley, Dan Gordon, Charles Gregory, Wesley Frame, Jason Matthys and Karen Gorton (collectively, "Plaintiffs"), individually and on behalf of a class of all similarly situated indirect purchasers, bring this action under Section 1 of the Sherman Act for injunctive relief; for damages and other relief under the antitrust and consumer protection laws of California, Kansas, Minnesota, Nebraska, North Dakota, South Dakota and Wisconsin; and for restitution and disgorgement of

65618

profits for unjust enrichment against Defendants Champion Laboratories, Inc., United Components, Inc., Purolator Filters N.A. L.L.C., Bosch U.S.A., Mann+Hummell U.S.A., ArvinMeritor Inc., Honeywell International, Wix Filtration Corp. LLC, Cummins Filtration Inc., The Donaldson Company, and Baldwin Filters, Inc. (collectively, "Defendants").

The allegations herein are based in part on recorded conversations and the personal knowledge of, and information provided by, a senior sales executive ("Confidential Informant") who was employed by two Defendants during the Class Period (as defined below).

In support thereof, Plaintiffs allege as follows:

## NATURE OF THE ACTION

1.     This action arises out of a conspiracy among the leading manufacturers of replacement oil, gas, transmission and air filters (as defined below) to fix, raise, maintain or stabilize prices, and allocate customers for those products in California, Kansas, Minnesota, Nebraska, North Dakota, South Dakota and Wisconsin, as well as throughout the United States.

2.     During the Class Period, Defendants and their co-conspirators exchanged confidential pricing material and conspired at industry events and elsewhere to fix, raise, maintain or stabilize prices, and allocate customers for replacement oil, gas, transmission and air filters in the United States.

3.     As a result of Defendants' unlawful conduct, Plaintiffs and members of the Classes paid artificially inflated prices for these products, and therefore have suffered injury to their business and property.

4.     Plaintiffs bring this action on behalf of all persons and entities in the Class (defined *infra*) who purchased replacement oil, gas, air, and transmission filters indirectly from any Defendant at any time from January 1, 1999 through the present (the "Class Period").

65618

2

## JURISDICTION AND VENUE

5.      This action is instituted under Section 16 of the Clayton Act, 15 U.S.C. § 26 for injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1; to recover actual, statutory, and punitive damages under state antitrust and consumer protection laws, and to recover the costs of suit, including reasonable attorneys' fees, for the injuries that Plaintiffs and all others similarly situated sustained as a result of the Defendants' violations of those laws.

6.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1337.  The Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.  The Court also has jurisdiction over the state law claims under 28 U.S.C. § 1332 because the amount in controversy for the Classes exceeds $5,000,000, and there are members of each of the Classes who are citizens of a different state than the Defendants.

7.      Venue is proper in this Judicial District pursuant to 15 U.S.C. § 22 and 28 U.S.C § 1391 because, during the Class Period, Defendants resided, transacted business, were found, or had agents in this District, and a substantial portion of the affected interstate trade and commerce described below has been carried out in this District.

8.      This Court has personal jurisdiction over each Defendant because, *inter alia*, each Defendant:  (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped, and/or delivered substantial quantities of replacement filters throughout the United States, including this District; (c) had substantial contacts with the United States, including in this District; and/or (d) was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

65618

## DEFINITIONS

9.    The term "Filters" as used in this Complaint refers to replacement oil, gas, transmission and air filters manufactured and/or sold by Defendants. Automotive filters are typically disposable and require regular replacement.

10.    Automotive filters remove particles that would either increase wear and tear on a system or decrease the efficiency of the system. Oil, gas or transmission filters remove harmful particles in those fluids. Air filters are the main shield against the dust and other particulate matters that are sucked into the car's engine.

11.    Filter manufacturers, such as Defendants, sell Filters to both vehicle manufacturers for use in new automotives, as well as to "aftermarket" sellers for professional or self-installment. Defendants are the primary manufacturers of aftermarket (or "replacement") Filters in the United States and the allegations contained herein involve the Filters aftermarket. Annual revenues for Filters are approximately $3-5 billion in the United States.

## PLAINTIFFS

12.    Francis Doll III is an individual who is a resident of San Diego, California. Mr. Doll purchased Filters indirectly from one or more of the Defendants during the Class Period.

13.    Plaintiff Perry Piper is an individual who is a resident of McFarland, Kansas. Mr. Piper purchased Filters indirectly from one or more of the Defendants during the Class Period.

14.    Plaintiff John Foster is an individual who is a resident of Blaine, Minnesota. Mr. Foster purchased Filters indirectly from one or more of the Defendants during the Class Period.

15.    Plaintiff Ben Hammer is an individual who is a resident of Moorhead, Minnesota. Mr. Hammer purchased Filters indirectly from one or more of the Defendants during the Class Period.

65618

16.     Plaintiff Dale Bentley is an individual who is a resident of Omaha, Nebraska. Mr. Bentley purchased Filters indirectly from one or more of the Defendants during the Class Period.

17.     Plaintiff Dan Gordon is an individual who is a resident of Fargo, North Dakota. Mr. Gordon purchased Filters indirectly from one or more of the Defendants during the Class Period.

18.     Plaintiff Charles Gregory is an individual who is a resident of Rapid City, South Dakota. Mr. Gregory purchased Filters indirectly from one or more of the Defendants during the Class Period.

19.     Plaintiff Wesley Frame is an individual who was, until February 2008, a resident of River Falls, Wisconsin. Mr. Frame purchased Filters indirectly from one or more of the Defendants during the Class Period.

20.     Plaintiff Jason Matthys is an individual who is a resident of Spring Valley, Wisconsin. Mr. Matthys purchased Filters indirectly from one or more of the Defendants during the Class Period.

21.     Plaintiff Karen Gorton is an individual who is a resident of Elkhorn, Wisconsin. Ms. Gorton purchased Filters indirectly from one or more of the Defendants during the Class Period.

## DEFENDANTS

22.     Defendant Champion Laboratories, Inc. is a corporation headquartered at Albion, Illinois, with a business address at 200 S. Fourth St., Albion, IL 62806. Champion Laboratories, Inc. manufactured and sold Filters in the United States during the Class Period. Champion Laboratories, Inc. sells filters under the brand name Champ, Encore, Imperial, Kleener, Luber-finer, MXM, Petro Clear, Roughneck, TotalTec, United Components, and Z Guard.

65618

5

23.     Defendant United Components, Inc. is a corporation headquartered in Evansville, Indiana, with a business address at 14601 Highway 41 N., Evansville, IN 47725-9357. Champion Laboratories, Inc. is a wholly-owned subsidiary of United Components, Inc. Champion Laboratories, Inc. and United Components, Inc. are herein collectively referred to as "Champion."

24.     Defendant Purolator Filters N.A. L.L.C is a limited liability corporation with its principal place of business at Fayetteville, North Carolina, and a business address at 3200 Natal St., Fayetteville, NC 28306-2845. Purolator Filters N.A. L.L.C. manufactured and sold Filters in the United States during the Class Period. Purolator Filters N.A. L.L.C. is a joint venture between Bosch U.S.A. and Mann+Hummel U.S.A., Inc.

25.     Defendant Bosch U.S.A. is a company headquartered in Broadview, Illinois, with a business address at 38000 Hills Tech Drive, Farmington Hills, MI 48331.

26.     Defendant Mann+Hummell U.S.A. is a company headquartered in Portage, Michigan, with a business address at 6400 S. Sprinkle Road, Portage, MI 49002.

27.     Defendant ArvinMeritor Inc. is a corporation headquartered in Troy, Michigan, with a business address at 2135 West Maple Road, Troy, MI 48084. Prior to April 2006, Purolator Filters N.A. L.L.C. was owned by ArvinMeritor Inc. Purolator Filters N.A. L.L.C., Bosch U.S.A., Mann+Hummel U.S.A. and ArvinMeritor Inc. are herein collectively referred to as "Purolator."

28.     Defendant Honeywell International ("Honeywell") is a corporation headquartered at Morristown, New Jersey, with a business address at 100 Columbia Road, Morristown, NJ 07962. Honeywell manufactured and sold Filters in the United States during the Class Period. Honeywell International Consumer Products Group is a division of Honeywell located in

65618

Danbury, Connecticut and is responsible for the manufacture and sale of Filters, principally under the brand name FRAM.

29.    Defendant Wix Filtration Corp. LLC ("Wix") is a limited liability company headquartered in Gastonia, North Carolina, with a business address at One Wix Way, Gastonia, NC 28054. Wix manufactured and sold Filters in the United States during the Class Period.

30.    Defendant Cummins Filtration Inc. ("Cummins") is a wholly-owned subsidiary of Cummins Inc. and is headquartered in Nashville, Tennessee, with a business address at 2931 Elm Hill Pike, Nashville, TN 37214. Cummins manufactured and sold Filters in the United States during the Class Period, principally under the brand name Fleetguard.

31.    Defendant The Donaldson Company ("Donaldson") is a corporation headquartered in Minneapolis, Minnesota, with a business address at 1400 West 94th St., Minneapolis, MN 55431. Donaldson manufactured and sold Filters in the United States during the Class Period.

32.    Defendant Baldwin Filters, Inc. ("Baldwin") is a corporation headquartered in Kearney, Nebraska, with a business address at 4400 E. Hwy 30, Kearney, NE 68848-6010. Baldwin manufactured and sold Filters in the United States during the Class Period.

33.    Champion, Purolator, Honeywell, Wix, Donaldson, Cummins and Baldwin are collectively referred to herein as "Defendants."

## CO-CONSPIRATORS

34.    Various other persons, firms and corporations, not named as Defendants herein, have participated as co-conspirators with Defendants and have performed acts and made statements in furtherance of the conspiracy. Each Defendant acted as the agent or joint venturer of or for other Defendants with respect to the acts, violations and common course of conduct

65618

alleged by Plaintiffs.

35.    Whenever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

## CLASS ACTION ALLEGATIONS

36.    Plaintiffs bring this action on behalf of themselves and as a class action under the provisions of Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following Class, defined below, for purposes of injunctive relief:

> All persons and entities residing in the United States who, from January 1, 1999 through the present, purchased replacement oil, gas, transmission and air filters indirectly from any Defendant.

37.    Plaintiffs also bring this action on their own behalf and as a class action pursuant to Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure and/or respective state statute(s), on behalf of residents of California, Kansas, Minnesota, Nebraska, North Dakota, South Dakota and Wisconsin (collectively, the "Indirect Purchaser State Claims") with respect to claims under the antitrust and/or consumer protection statutes of each of those jurisdictions and under common law principles of unjust enrichment recognized in each of those jurisdictions:

> All persons and entities residing in California, Kansas, Minnesota, Nebraska, North Dakota, South Dakota or Wisconsin who, from January 1, 1999 through the present, purchased replacement oil, gas, transmission and air filters indirectly and for end use from any Defendant.

38.    These Indirect Purchaser State Classes are confined to indirect purchasers of Filters manufactured or sold by one or more of the Defendants to residents of each respective

state for such resident's own use, whether as a discrete purchase from a retailer or as part of a bundle of services and parts, as described in paragraphs 62-66.

39.     Excluded from each of the Classes are all governmental entities, any Defendants, their employees, and their respective parents, subsidiaries and affiliates.

40.     Plaintiffs do not know the exact number of Class members because such information is in the exclusive control of Defendants.  Due to the nature of the trade and commerce involved, Plaintiffs believe that there are hundreds or thousands of members of each of the Classes as described above, the exact number and their identities being known by Defendants.

41.     Each of the Classes are so numerous and geographically dispersed that joinder of all members is impracticable.

42.     There are questions of law and fact common to the Classes, including:

  a. Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize prices, or allocate customers of Filters;

  b. The identity of the participants of the alleged conspiracy;

  c. The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

  d. Whether the alleged conspiracy violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

  e. Whether the alleged conspiracy violates the antitrust, unfair competition, and consumer protection laws of the states as alleged below;

  f. Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of the Plaintiffs and the other members of the Classes;

  g. The effect of the alleged conspiracy on the prices of Filters sold in the United States during the Class Period;

  h. Whether the Defendants have been unjustly enriched at the expense of Plaintiffs and members of the Classes;

  i. Whether the Defendants and their co-conspirators fraudulently concealed

65618

the conspiracy's existence from Plaintiffs and the other members of the Class; and

j.    The appropriate Class-wide measure of damages.

43.    Plaintiffs will fairly and adequately protect the interests of the Classes in that Plaintiffs have no interests that are antagonistic to other members of the Classes and have retained counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

44.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

45.    The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

46.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The Classes are readily identifiable.  Prosecution as a class action will eliminate the possibility of repetitious litigation.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.  This class action presents no difficulties in management that would preclude maintenance as a class action.  After determination of the predominating common issues identified above, if necessary or appropriate, the Class can be divided into logical and manageable subclasses.

## NATURE OF THE INDUSTRY

47.    The Filter market is highly susceptible to cartel activity.  The factors include

market concentration, the commodity nature of Filters (including both interchangeability and price as the primary driver of sales), barriers to entry, inelastic demand, and lack of substitutability of the product.

48.    A high degree of concentration facilitates the operation of a cartel because it makes it easier to coordinate behavior among possible co-conspirators and makes it more difficult for customers to avoid the effects of collusive behavior.  The market for aftermarket auto filters is highly concentrated, and Defendants control 90% of the sales of these products.

49.    Filters are considered to be inter-exchangeable, undifferentiated products. All filters must undergo Society of Automotive Engineers (SAE) testing to ensure that they meet vehicle manufacturers' specifications.  An industry report notes that vehicle manufacturers have done a better job utilizing a small number of oil filters to cover all of their engine applications. Thus, there are fewer part numbers in the aftermarket filter line than other aftermarket automotive products.

50.    Price is the key driver of sales of Filters.  According to an industry report, direct purchasers surveyed for the report considered price to be the most important factor in their purchaser of Filters.

51.    The presence of significant barriers to entry makes new entry by others difficult and helps to facilitate the operation of a cartel.  In the market for Filters, there are significant barriers to entry.  In the aftermarket auto filter market, barriers to entry arise primarily from the need for significant start-up capital expenditures, initial product depth within a product line, distribution infrastructure and long-standing customer relationships.

52.    There is significant evidence that demand for Filters is inelastic, or in other words, does not change in the face of price changes. It is well established in economics that

65618

goods which form a small share of consumer expenditure exhibit inelastic demand, because consumers are less likely to change consumption patterns when the absolute price increase is limited. Because vehicle manufacturers either require or strongly encourage filter changes as specific intervals, Class Members do not decrease their use of Filters when prices increase. Filters are a small part of the cost of owning and maintaining an automobile.

53.    There are no reasonable substitutes for Filters. Vehicle owners have little choice but to have the auto filters in their vehicles replaced because they tend to wear out over time and are necessary for the operation of their cars.

## TRADE AND INTERSTATE COMMERCE

54.    The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of and substantially affected interstate commerce.

55.    During the Class Period, Defendants and their co-conspirators manufactured, sold, and shipped substantial quantities of Filters in a continuous and uninterrupted flow of interstate commerce to customers located in states other than the states in which the Defendants produced these products.

56.    Filter manufacturers, such as Defendants, sell Filters to both vehicle manufacturers for use in new automotives, as well as to "aftermarket" sellers for professional or self-installment. Defendants are the primary manufacturers of aftermarket (or "replacement") Filters in the United States and the allegations contained herein involve the Filters aftermarket. Annual Filters sales in the United States are approximately $3-5 billion.

57.    The conspiracy in which the Defendants and their co-conspirators participated had a direct, substantial, and reasonably foreseeable effect on United States commerce.

58.    Defendant Honeywell estimated in 2007 that there were 217 million cars on the

65618

road in the United States in that year. Most car manufacturers recommend that the car owner replace the oil filter at every oil change. NAPA recommends that a car owner replace the air filter once a year, or every 15,000 miles. Thus, for most cars on the road today, the owners replace their vehicle's oil filter at least every year and air filters approximately every year.

59.     Changing automotive filters is imperative to an automobile's life and performance. Subsequently, there are no alternatives to filters. According to a car care site, "next to changing your oil and oil filter, replacing your air and fuel filters on a regular basis is the single most important act of maintenance you can perform for your engine."

60.     Because of the recommended maintenance intervals, oil changes are the automotive aftermarket's number one service and, therefore, oil filters are the aftermarket's highest volume replacement part.

61.     During the Class Period, Plaintiffs and the Class members paid supra-competitive prices for Filters. These inflated prices have been passed on to them by manufacturers, distributors, and retailers.

62.     The filter aftermarket is organized around two groups of direct purchasers—those that buy Filters for installation into others' vehicles, and retailers and distributors who sell Filters to two segments: the do-it-yourself group, or DIY group, who install Filters into their own vehicles, and the do-it-for-me retailers, or DIFM group, who install Filters into others' vehicles for them.

63.     The DIY group is supplied primarily through retailers and distributors like Advance Auto Parts, AutoZone, Wal-Mart or O'Reilly. According to O'Reilly Automotive Co-President Greg Henslee, in 2007 the top ten retailers to the DIY and wholesale DIFM market sold approximately 40% of all replacement Filters sold in the United States.

65618

64.    The DIY group of indirect purchasers who purchased Filters for their own use are included in the Classes defined above.

65.    These same large retailers and others also sell filters to businesses that install them into their customers' vehicles as part of a packaged oil change contract, the so-called do-it-for-me (DIFM) group.  These end-consumers of Filters as part of a package of parts and services are part of the Classes defined above.

66.    Thus, end users of Filters, either as purchasers of Filters independently (DIY) or as part of a service package that included both parts and services (DIFM), are included in the Classes.

67.    The conspiratorial conduct of the Defendants and their co-conspirators, the purpose of which is to raise the prices of Filters, would directly increase the price of the Filters sold to indirect purchasers.  As two noted antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and Lawrence A. Sullivan (Professor of Law Emeritus at Northwestern Law School and author of the Handbook of the Law of Antitrust) – have observed, "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception; it is the rule."

68.    The pass-through of the overcharges to Class members that purchased Filters as part of a service package that included both parts and services are both identifiable and quantifiable.  Because each state requires the DIFM provider to collect sales tax on the sale of Filters, but not on the service portion of the package of services (the oil change or installation of the filter itself), each retailer must, by law, break out the charge for the Filter.  Those charges may be itemized on a sales receipt, or may be kept internally by the retailer for purposes of

calculating its sales tax collection and payment obligations.

## FACTUAL ALLEGATIONS

69.     During the Class Period, Defendants and their co-conspirators conspired, contracted or combined to fix, raise, maintain or stabilize prices, rig bids, and allocate customers for Filters in the United States.  Defendants conspired in face-to-face meetings at industry trade shows and through the exchange of confidential price listings.

70.     Defendants have extinguished the market forces of competition to their mutual benefit.  Consumers, including Plaintiffs and Class members, are injured by paying supra-competitive prices for Filters.

71.     Because Defendants control the market for Filters, there are virtually no choices for consumers who require such a product other than buying one from entities that pay supra-competitive prices to Defendants because of Defendants' unlawful agreement alleged herein.

72.     The purpose of Defendants' unlawful conspiratorial meetings was to ensure that all Defendants agree to participate in, and implement, a price-fixing scheme.

73.     As a result of their unlawful agreement, Defendants implemented at least three coordinated price increases, distributed rigged bids, and allocated customers for Filters during the Class Period.

74.     In formulating and effectuating their contract, combination, or conspiracy, Defendants and their co-conspirators engaged in anticompetitive activities, including:

       a.     Attending meetings or otherwise engaging in discussions in the United States and elsewhere by telephone, facsimile, and Email regarding the sale of Filters;

       b.     Agreeing to charge specific prices for Filters and to allocate customers and

65618

otherwise fix, increase, maintain, or stabilize the prices of Filters sold to purchasers in the United States;

c.    Agreeing not to compete for one another's customers by, among other things, not submitting prices or bids to certain customers or by submitting intentionally high prices or bids to certain customers;

d.    Selling Filters to customers in the United States and elsewhere at collusive and non-competitive prices pursuant to the agreement reached;

e.    Accepting payment for Filters sold in the United States and elsewhere at collusive and non-competitive prices;

f.    Communicating with one another to discuss the prices, customers, markets, and price levels of Filters sold in the United States;

g.    Authorizing or consenting to the participation of employees in the conspiracy; and

h.    Concealing the conspiracy and conspiratorial contacts through various means.

75.    At least as early as 1999, Defendants and their co-conspirators had numerous confidential discussions with each other and exchanged extensive communications regarding pricing and customers. This conspiratorial conduct resulted in an unlawful agreement to fix, raise, maintain or stabilize prices, rig bids, and allocate customers for Filters in the United States.

76.    As just one example, on June 28, 1999, a Purolator senior executive faxed to his counterpart at Honeywell a letter which announced a 6-percent price increase on all Purolator-branded Filters scheduled to become effective on August 15, 1999. Purolator did not notify its customers of the increased prices until more than two weeks later, on July 14, 1999.

65618

77.    Defendants also had face-to-face meetings regarding their respective companies' contemplated price increases. One or more of these meetings took place in May 1999 at the Heritage Show in Nashville, Tennessee, a regular meeting of members of the Filters industry. At this and other meetings, Defendants agreed to raise Filter prices, which they subsequently did.

78.    At a meeting of Champion sales representatives in February 2004, Champion's President informed his sales team of Champion's proposed price increase and instructed them to make sure Champion's competitors followed suit in terms of timing and amount pursuant to their continuing agreement. Champion sales representatives followed the directive and met with Defendants' representatives to further the conspiracy.

79.    Defendants engaged in continuous and ongoing face-to-face meetings to further their anticompetitive activities. Many of these meetings occurred at the annual Filter Council meeting held in Nashville, Tennessee. The Filter Council meeting was used as a vehicle to further the anticompetitive purposes of Defendants' unlawful conspiracy.

80.    In an internal company Email from 2004, under the subject line "Price Increase," Champion confirmed that the other Defendants were "on board" with the amount of a coordinated price increase.

81.    Pursuant to their unlawful agreement, Defendants each instituted similar price increases for Filters during the Class Period, including in 1999, early 2004 and late 2004/early 2005. These price increases were approximately 4-6% each.

82.    Defendants' conduct during the Class Period in collusively fixing, increasing, maintaining or stabilizing prices, rigging bids, and allocating customers was for the sole purpose of foreclosing price competition in order to maintain artificially high prices for their Filters.

83.    By coordinating their pricing activities and allocating customers, Defendants have

65618

removed from Plaintiffs the ability to constrain Defendants' pricing by moving (or threatening to move) their Filter business from one Defendant to another in response to price increases.

84.     Absent their coordinated activity, Defendants would have been forced to price Filters competitively or risk losing the significant business of their Filter customers, including Plaintiffs.  With unrestrained competition, Defendants would have been forced to forego their price increases altogether, implement smaller ones, or even decrease their prices in order to retain customers.

85.     As a result of Defendants' unlawful conspiracy, Plaintiffs have been forced to pay supracompetitive prices for Defendants' Filters.

## **FRAUDULENT CONCEALMENT**

86.     Throughout the Class Period, Defendants and their co-conspirators affirmatively and fraudulently concealed their unlawful conduct by engaging in secret meetings and communications in furtherance of their conspiracy, and by holding themselves out to the public and their customers, including Plaintiffs, as true competitors.

87.     Plaintiffs and the Class members did not discover, nor could have discovered through reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws until shortly before this litigation was commenced because Defendants and their co-conspirators used, and continue to use, deceptive and secret methods to avoid detection and to affirmatively conceal their violations.  Nor could Plaintiffs or the Class members have discovered the violations earlier than that time because Defendants and their co-conspirators conducted their conspiracy secretly, concealed the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently concealed their activities through various other means and methods designed to avoid detection.

65618

88.     Defendants concealed their unlawful conspiracy in several ways, including public announcements that the price increases were due to the increases in the price of steel and that they were meeting the price increases of their competitors.  As a result of Defendants' active concealment of their conspiracy, any and all applicable statutes of limitation otherwise applicable to the allegations herein have been tolled.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### VIOLATION OF § 1 OF THE SHERMAN ACT

89.     Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

90.     Beginning at least as early as January 1, 1999 and continuing thereafter through the present, the exact dates being unknown to Plaintiffs, Defendants contracted, combined, or conspired to fix, raise, maintain or stabilize prices, rig bids, and allocate customers of Filters in the United States; the purpose and effect of which is to maintain supracompetitive prices for their Filters.  This conspiracy is *per se* illegal under Section 1 of the Sherman Act, 15 U.S.C. § 1.

91.     This conspiracy consists of a continuing understanding and concert of action among Defendants to coordinate their Filter prices.

92.     This conspiracy has foreclosed and restrained competition among Defendants and caused Plaintiffs and the Class to pay artificially high prices for Defendants' Filters.

93.     As a direct and proximate result of the unlawful conduct of Defendants and their co-conspirators, as alleged herein, Plaintiffs and other members of the Class have been injured in their business and property.  As such, Defendants' conduct should be enjoined.

65618

## SECOND CLAIM FOR RELIEF

## VIOLATION OF STATE ANTITRUST STATUTES

94.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

95.     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professional Code. Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize and maintain prices of, and allocate markets for, Filters at supra-competitive levels.

96.     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above, in violation of Kansas' Antitrust Act, Kansas Stat. Ann. §§ 50-101 *et seq.*

97.     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above, in violation of the Minnesota Antitrust Act, Minn. Stat. §§ 325D.22 *et seq.*

98.     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above, in violation of Nebraska's Antitrust Act, Neb. Rev. Stat. §§ 59-801 et. *seq.*

99.     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above, in violation of the North Dakota Antitrust Act, North Dakota Cent. Code §§ 51-08.1-01 *et seq.*

100.     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above, in violation of the South Dakota Antitrust Act, South Dakota Codified Laws Ann. §§ 37-1 *et seq.*

65618

101.    During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above, in violation of Wisconsin's Antitrust Act, Wisconsin Stat. § 40-12-105.

102.    The aforesaid violations of the state antitrust laws consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and to allocate markets for, Filters.

103.    For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including, but in no way limited to, the acts, practices and course of conduct set forth above and the following:

   a.    to fix, raise, maintain and stabilize the price of Filters;

   b.    to allocate markets for Filters amongst themselves;

   c.    to submit rigged bids for the award and performance of certain Filters contracts; and

   d.    to allocate among themselves the production of Filters.

104.    The combination and conspiracy alleged herein has had, inter alia, the following effects:

   a.    price competition in the sale of Filters has been restrained, suppressed and/or eliminated in the State of California and throughout the United States;

   b.    prices for Filters sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-

65618

21

competitive levels in the State of California and throughout the United

States; and

c.    those who purchased Filters from Defendants and their co-conspirators

have been deprived of the benefit of free and open competition.

105.    Plaintiffs and the other members of the Class paid supra-competitive, artificially

inflated prices for Filters.

106.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

the members of the Class have been injured in their business and property in that they paid more

for Filters than they otherwise would have paid in the absence of Defendants' unlawful conduct.

As a result of Defendants' violation of the state antitrust statutes detailed above, Plaintiffs seek

treble damages and the costs of suit, including reasonable attorneys' fees.

107.    Class members in California, Kansas, Minnesota, Nebraska, North Dakota, South

Dakota and Wisconsin paid supra-competitive, artificially inflated prices for Filters.  As a direct

and proximate result of Defendants' unlawful conduct, such members of the Class have been

injured in their business and property in that they paid more for Filters than they otherwise would

have paid in the absence of Defendants' unlawful conduct.

108.    As a result of Defendants' violations of the statute set forth, Plaintiffs and other

members of the Class seek damages and costs of suit, including reasonable attorneys' fees.

## THIRD CLAIM FOR RELIEF

## VIOLATION OF STATE CONSUMER PROTECTION AND UNFAIR COMPETITION LAWS

109.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

allegation set forth in the preceding paragraphs of this Complaint.

110.    Defendants have engaged in unfair competition and unfair, unconscionable,

65618

deceptive or fraudulent acts and practices in violation of the state consumer protection and unfair competition statutes listed below.

111.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices, in violation of California Bus. & Prof. Code § 17200 *et seq.*

112.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices, in violation of Kansas Stat. § 50-623 *et seq.*

113.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices, in violation of Nebraska Rev. Stat. 59-1601 *et. seq.*

114.    Class members in these states listed above paid supra-competitive, artificially inflated prices for Filters. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the members of the Class have been injured in their business and property in that they paid more for Filters than they otherwise would have paid in the absence of Defendants' unlawful conduct.

115.    As a result of Defendants' violations of the laws listed above, the members of the Class in the states listed above are entitled to equitable relief, including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of such business practices, including damages.

## FOURTH CLAIM FOR RELIEF

## UNJUST ENRICHMENT AND DISGORGEMENT OF PROFITS

116.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

117.    Defendants have been unjustly enriched through overpayments by Plaintiffs and Class members and the resulting profits enjoyed by Defendants as a direct result of such

65618

overpayments. Plaintiffs' detriment and Defendants' enrichment were related to and flowed from the conduct challenged in this Complaint.

118.    Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiffs and members of the Classes.

119.    Plaintiffs and members of the Classes seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class members may seek restitution.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE,** Plaintiffs pray as follows:

A.  That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and adjudge Plaintiffs to be adequate representatives thereof;

B.  That the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators, be adjudged to have been a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C.  That Defendants' conduct violates the state antitrust laws listed above;

D.  That Defendants' conduct violates the state consumer protection and unfair competition laws listed above;

E.  That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner:

65618

1.  continuing, maintaining, or renewing the contract, combination, or conspiracy alleged herein, or from engaging in any other contract, combination, or conspiracy having a similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect; and

2.  communicating or causing to be communicated to any other person engaged in the manufacture, distribution, or sale of Filters information concerning prices, customers, markets, or other terms or conditions of sale of any such product except to the extent necessary in connection with bona fide sales transactions between the parties to such communications.

F.  That judgment be entered for Plaintiffs and members of the Class against Defendants for three times the amount of damages sustained by Plaintiffs and the members of the Classes as allowed by law, together with the costs of this action, including reasonable attorneys' fees;

G.  That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy or combination alleged herein, or from entering into any other conspiracy alleged herein, or from entering into any other contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

H.  That Plaintiffs and members of the Classes be awarded restitution, including

65618

disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

I.    That Plaintiffs and the Classes be awarded pre-judgment and post-judgment interest at the highest legal rate from and after the date of service of this Complaint to the extent provided by law; and

J.    That Plaintiffs and members of the Classes have such other, further or different relief as the case may require and the Court may deem just and proper under the circumstances.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

**THE PLAINTIFFS**

By: _____

Patrick A. Klingman (ct17813)
pklingman@sfmslaw.com
**SHEPHERD FINKELMAN MILLER & SHAH, LLP**
65 Main Street
Chester, CT 06412-1311
Phone: (860) 526-1100
Fax: (860) 526-1120

Vincent J. Esades
Renae D. Steiner
Katherine T. Kelly
**HEINS MILLS & OLSON, PLC**
310 Clifton Avenue
Minneapolis, MN 55403
Phone: (612) 338-4605
Fax: (612) 338-4692

65618

Christian Sande
**CHRISTOPHER SANDE LLC**
2751 Hennepin Avenue South, No. 232
Minneapolis, MN  55408
Phone: (612) 387-1430
Fax: (612) 677-3078

Timothy J. Peters
**PETERS LAW FIRM**
2116 Second Avenue South
Minneapolis, MN  55404
Phone: (612) 746-1475
Fax: (612) 874-9793

**Their Counsel**

65618